UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADASHA TURNER,

        Plaintiff,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

        Defendant.

C17-1 TSZ

ORDER

THIS MATTER comes before the Court on cross-motions for judgment,[1] docket nos. 30 and 33. Having reviewed all papers filed in support of, and in opposition to, each motion, as well as the relevant portions of the Administrative Record ("AR"), the Court enters the following order.

---

[1] Although the parties each cited to Federal Rule of Civil Procedure 52 as the basis for their respective motions, the Court treats the motions as brought pursuant to Federal Rule of Civil Procedure 56 because matters outside the Administrative Record have been presented. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999). The Court may not grant either party's motion unless no genuine dispute exists as to the material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

ORDER - 1

**Background**

Plaintiff Adasha Turner brings this action against defendant Life Insurance Company of North America ("LINA"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking a declaratory judgment that, because of her disability, LINA is required to provide to her, with respect to a group life insurance policy, a waiver of premium ("WOP") benefit until she is no longer disabled or she reaches the age of 65, whichever occurs earlier. The policy at issue states:

> If the Employee[2] submits satisfactory proof that he or she has been continuously Disabled for the Waiver Waiting Period shown in the Schedule of Benefits, coverage will be extended up to the Maximum Benefit Period shown in the Schedule of Benefits.[3]

AR 4351. The Waiver Waiting Period shown in the Schedule of Benefits is nine (9) months after the Employee's active service ends. AR 4338, 4345. Plaintiff stopped working on March 13, 2014, at the age of 36, because of a high-risk pregnancy. *See* AR 1064 & 1071. Thus, to qualify for WOP benefits, plaintiff was required to provide "satisfactory proof" that she was "continuously Disabled" from March 14, 2014, to December 14, 2014. *See* Def.'s Mot. at 3 n.2 (docket no. 33).

The term "Disabled" means that, as a result of injury or sickness, the Employee is "unable to perform all the material duties of any occupation [for] which he or she may

---

[2] The parties agree that plaintiff was an "Employee" within the meaning of the policy, having previously worked for the University of Arizona Health Network, the subscriber of the policy. *See* AR 4330; Pla.'s Mot. at 1 (docket no. 30); Def.'s Mot. at 2 (docket no. 33).

[3] The Maximum Benefit Period shown in the Schedule of Benefits is up to the age of 65. AR 4338, 4345. Eligibility for WOP benefits is evaluated on an annual basis. *See* AR 4351 ("After premiums have been waived for 12 months, they will be waived for future periods of 12 months, if the Employee remains Disabled and submits satisfactory proof that Disability continues. Satisfactory proof must be submitted to the Insurance Company 3 months before the end of the 12-month period.").

ORDER - 2

reasonably become qualified based on education, training or experience." AR 4351. In this case, no dispute exists with regard to the disorders from which plaintiff suffers. The disagreement that brings this matter before the Court is whether plaintiff's disorders render her "Disabled" as defined in the policy.[4] In deciding that plaintiff is not "Disabled" for purposes of WOP benefits, LINA elected not to conduct an independent medical examination or functional capacity evaluation of plaintiff, and instead relied on the reviews of plaintiff's records that were conducted by S. Rebecca Gliksman, M.D. and Joseph Rea, M.D., both of whom specialize in occupational medicine, and by

---

[4] Notably, because of her disorders, plaintiff is receiving from LINA long-term disability ("LTD") benefits pursuant to a different policy, which indicates:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
>
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>
> 2. unable to earn 60% or more of his or her Indexed Earnings.

AR 11. According to LINA, it has provided LTD benefits, but denied WOP benefits because plaintiff can work as an Information Clerk or Gate Guard, AR 2513-14, or as a Medical Technologist, Teaching Supervisor, AR 3295-96, but those occupations would not allow plaintiff to earn at least 60% of what she made as a Neurophysiologic Inter-Operative Monitoring Specialist, AR 1986, see AR 3295 (plaintiff's indexed earnings were $108,917.04 per year). See Def.'s Mot. at 20-21 (docket no. 33). LINA's explanation for why it has granted LTD benefits, but not WOP benefits, seems disingenuous. The record contains no estimate regarding the wages plaintiff might earn as an Information Clerk or Gate Guard, see AR 2513-14, and the amount plaintiff might receive as a Medical Technologist exceeds the 60% threshold, see AR 3295, which would disqualify her from receiving LTD benefits. Nevertheless, LINA has extended LTD benefits to plaintiff.

ORDER - 3

ophthalmologists Jacqueline Wong, M.D. and Sami Kamjoo, M.D., as well as on the transferable skills analysis ("TSA") performed by certified rehabilitation counselor ("CRC") Paul Wilson, M.A.

On November 3, 2015, CRC Wilson completed a TSA that relied entirely on Dr. Gliksman's assessments.[5] *See* AR 2513. CRC Wilson summarized Dr. Gliksman's opinion as follows:

> Limit lifting to <10 pounds, carrying <5 pounds, pushing/pulling <15 pounds, rare overhead reaching, walking 15 minute intervals 2-3 hours per day, standing 15 minute intervals 2-3 hours per day, sitting 45 minute to 1 hour intervals 6 hours per day, avoid stairs, bending occasionally, squatting occasionally, no crawling, rare stooping, occasional to frequent fine and simple grasp, occasional firm grasp and claimant has deteriorating vision but it does not preclude work with recommended glare protection, magnified font of at least 16 point and work at the computer in 20 minute intervals with 2-3 minute break between intervals. Claimant may benefit from computer glasses to avoid strain and extra lubrication as computer work tends to dry eyes.

*Id.* CRC Wilson did not include Dr. Gliksman's noted restriction that plaintiff be on a 4-hour-per-day work schedule for six weeks before increasing to a 6-hour shift. *See* Gliksman's Report at 46 (AR 2646) ("Since claimant has been out of the workforce for an extended period would start at 4 hours/day x 6 weeks and then advance to 6 hours/day x 4 weeks and the[n] advance as tolerated."). Based on his understanding of plaintiff's

---

[5] In a 46-page peer-review report dated September 11, 2015, *see* AR 2601-2646, Dr. Gliksman indicated that plaintiff has a "significant medical history with multiple conditions," including Arnold Chiari malformation (a structural defect in the base of the skull and cerebellum), Erhlos Danlos syndrome (a disorder that affects the connective tissues supporting the skin, bones, blood vessels, and organs, the symptoms of which can include loose joints and hypermobility, often accompanied by weak muscle tone and a tendency to experience dislocations), post-partum thyroiditis, scoliosis, retinal detachment and lattice degeneration, dysfunctional patella tracking, and urinary incontinence. AR 2644. Dr. Gliksman issued an addendum on October 5, 2015, *see* AR 2523-24, and a clarification on October 28, 2015, *see* AR 2519, but she never expressed an opinion that plaintiff could work an eight-hour, full-time shift.

ORDER - 4

residual functional capacity,[6] CRC Wilson concluded that plaintiff could perform sedentary work as an Information Clerk or Gate Guard. AR 2514. He did not, however, indicate whether such positions are available to individuals who can work only up to four or six hours per day. *See* AR 2513-14.

In connection with plaintiff's appeal of LINA's denial of WOP benefits, additional records were provided, a second round of peer reviews was conducted, and CRC Wilson performed another TSA. On June 17, 2016, Dr. Rea submitted a report recounting a conversation with plaintiff's treating physician, Kimo Hirayama, M.D., who indicated that "from a practical standpoint, Ms. Turner was functionally disabled, since she could not stand or walk and had considerably reduced strength, besides joint pain, particularly involving the hands and wrists, so that made it hard to hold onto objects." AR 3275. Nevertheless, Dr. Rea opined that plaintiff:

- could "lift, push, pull or carry up to 10 pounds on an occasional basis"
- could "stand for up to 15 minutes at a time for up to a total of three hours over an eight-hour period of time"
- could "walk for up to 15 minutes at a time for up to a total of two hours over an eight-hour interval of time"
- should "avoid squatting, crouching, crawling, kneeling, or climbing"
- should "avoid positioning at heights or on uneven surfaces"
- had no "limitation involving sitting, reaching, or hand usage."

AR 3276. Using this summary of plaintiff's residual functional capacity, along with an assessment by Dr. Kamjoo that plaintiff has no medically-necessary restrictions with regard to her eyes, and without any reference to the limitations outlined by Dr. Gliksman

---

[6] CRC Wilson used the phrase "*reasonable* functional capacity," but he presumably meant "*residual* functional capacity," which is a term of art in the social security context. *See* 20 C.F.R. §§ 404.1520 & 416.920.

or any explanation for ignoring them, CRC Wilson concluded that plaintiff could perform the work of a Medical Technologist, Teaching Supervisor.[7]  AR 3295-96.

**Discussion**

Plaintiff contends that the reviewers are biased,[8] and that their opinions are unreliable and contrary to the materials in the Administrative Record.  To resolve these issues pursuant to a *de novo* standard of review, <u>see</u> Minute Order (docket no. 17), the Court would have to weigh the evidence and make credibility determinations, which are roles reserved for a trier-of-fact and not appropriate considerations in deciding a motion for summary judgment.  Plaintiff, however, makes a different argument that the Court can address in motion practice.  Plaintiff challenges LINA's conclusion that she can perform "all the material duties" of the occupations identified by CRC Wilson (*i.e.*, Information Clerk, Gate Guard, and Medical Technologist) because CRC Wilson did not indicate whether an ability to work an eight-hour shift, five days a week, was a "material duty" of such occupations.

In response, LINA cites numerous cases for the proposition that the "any occupation" standard is "not demanding" and encompasses part-time, as well as full-time,

---

[7] Plaintiff's counsel characterizes Medical Technologist, Teaching Supervisor as the same position as plaintiff previously occupied, in other words, her "Regular Occupation," but the disparity in salaries between the two roles belies such conclusion.

[8] For support, plaintiff relies on information outside the Administrative Record that was provided by LINA, pursuant to the Minute Order entered September 13, 2017, docket no. 29, concerning the amounts paid in 2014 and 2015 to Exam Coordinators Network, Inc. and Medical Consultants Network, LLC for reviews conducted by Drs. Gliksman, Rea, Wong, and Kamjoo. <u>See</u> Discovery Correspondence (docket no. 38).

ORDER - 6

work.  *See* <u>McKenzie v. Gen. Tel. Co. of Cal.</u>, 41 F.3d 1310, 1317 (9th Cir. 1994),[9] <u>overruled on other grounds by</u> <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955 (9th Cir. 2006), <u>as recognized in</u> <u>Saffon v. Wells Fargo & Co. Long Term Disability Plan</u>, 522 F.3d 863, 872 n.2 (9th Cir. 2008); <u>Arnold v. Life Ins. Co. of N. Am.</u>, 650 F. Supp. 2d 500 (W.D. Va. 2009).[10]  Contrary to LINA's suggestion, however, the clause "any

---

[9] Neither <u>McKenzie</u> nor <u>Pannebecker v. Liberty Life Assurance Co. of Boston</u>, 542 F.3d 1213 (9th Cir. 2008), on which LINA also relies, address whether a person is disabled under an "any occupation" definition if he or she can work only part-time, and the question remains undecided in the Ninth Circuit.

[10] Although <u>Arnold</u> involved the same WOP provision that is at issue in this proceeding, its analysis is unpersuasive.  In asserting that the "plain meaning of the phrase 'any occupation' . . . unambiguously encompasses all occupations for which a claimant may reasonably become qualified, regardless of whether they are performed on a full-time or part-time basis," 650 F. Supp. 2d at 505, the <u>Arnold</u> Court did not cite to any dictionary or mention contrary decisions (*see infra* note 11), and relied on cases in which the policy language was substantially different.  For example, in <u>Donnell v. Metro. Life Ins. Co.</u>, 165 Fed. App'x 288 (4th Cir. 2006), which was referenced in <u>Arnold</u>, the LTD plan at issue did not even use the word "occupation," and instead defined disability as an inability "to perform each of the material duties" of "*any gainful work or service*" for which the claimant was "reasonably qualified."  <u>Id.</u> at 292-93 (emphasis added).  In <u>Doyle v. Paul Revere Life Ins. Co.</u>, 144 F.3d 181 (1st Cir. 1998), the term "totally disabled" required that the employee be "*completely prevented* from engaging in any occupation for which he is or may become suited."  <u>Id.</u> at 184 (emphasis in original).  In <u>Graeber v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan</u>, 421 F. Supp. 2d 1246 (N.D. Cal. 2006), the insured was "Totally Disabled" if "*continuously unable to perform* any occupation for which he or she is or may become qualified."  <u>Id.</u> at 1249 (emphasis added).  In <u>Shane v. Albertson's Inc. Emps.' Disability Plan</u>, 381 F. Supp. 2d 1196 (C.D. Cal. 2005), the policy indicated that "Total Disability shall mean the *complete inability* of the Employee to perform *any and every duty* of any gainful occupation for which he or she is reasonably fitted."  <u>Id.</u> at 1200 (original emphasis modified).  In <u>Billinger v. Bell Atl.</u>, 240 F. Supp. 2d 274 (S.D.N.Y. 2003), disability involved sickness or injury "which prevents the employee from engaging in any occupation *or employment*" for which he or she is or might reasonably become qualified.  <u>Id.</u> at 282 (original emphasis modified).  Finally, the portion of <u>Mullaly v. First Reliance Standard Life Ins. Co.</u>, 253 F. Supp. 2d 279 (D. Conn. 2003), that was cited in <u>Arnold</u> was merely dictum.  In <u>Mullaly</u>, the court ruled that the provision of the LTD policy pursuant to which the plaintiff sought payment of partial monthly benefits applied only if the plaintiff was working part-time for the employer through which he had LTD coverage, and because the plaintiff was employed elsewhere, the LTD insurer properly terminated his benefits.  <u>Id.</u> at 285.  As recognized by the <u>Mullaly</u> Court, it could have reached its decision without addressing the part-time/full-time conundrum.  <u>See id.</u> at 284.

occupation" does not itself indicate how much or how often an employee must be able to work to be deemed not disabled.[11] Rather, as plaintiff contends, in the policy at issue, the phrase "material duties" serves such function. In other words, to the extent that a material duty of an occupation is to perform for eight hours a day, five days a week, if a claimant cannot do so, then the claimant is "unable to perform all the material duties" of such occupation. See Halley v. Aetna Life Ins. Co., 141 F. Supp. 3d 855, 870-73 (N.D. Ill. 2015) (ruling that a person who was medically restricted to 40 hours of work per week could not perform any of the occupations identified in the TSA, which all required more than 40 hours per week (citing McFarland v. Gen. Am. Life Ins. Co., 149 F.3d 583, 588 (7th Cir. 1998) (observing that an individual can experience a qualitative and/or quantitative reduction in his or her abilities as a result of an injury or illness, using as an example of a qualitative reduction a baseball shortstop's inability to throw, one of

---

[11] The policy at issue does not define the term "occupation," and it must be interpreted in "an ordinary and popular sense as would a person of average intelligence and experience." See, e.g., Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995). An "occupation" is "the principal business of one's life : a craft, trade, profession or other means of earning a living : employment, vocation." See Webster's 3d New Int'l Dictionary 1560 (1981) ["Webster's"]; see also id. at 2561 (a "vocation" is "the work in which a person is regularly employed usu. for pay : line of work : occupation"). At least two courts have understood "another occupation" or "any occupation" to contemplate full-time work. Bruce v. N.Y. Life Ins. Co., 2003 WL 21005313 at *6 (N.D. Cal. Apr. 28, 2003) ("Ordinarily, the term 'occupation,' unless modified by 'part-time,' contemplates full-time work."); see Sloan v. Hartford Life & Accident Ins. Co., 433 F. Supp. 2d 1037, 1050 (D.N.D. 2006). In contrast, a case cited by LINA, Kelly v. Prudential Ins. Co. of Am., 2006 WL 2037454 (D. Ore. July 18, 2006), concluded that the plaintiff was not disabled because she could work part-time, but the LTD plan in Kelly used the word "job," which means "a piece of work" (as in "odd jobs" or today's job) or "regular remunerative employment," Webster's at 1217, rather than "occupation," and LINA has not established that the terms are interchangeable. Even if the Court were, however, to follow LINA's approach, and infuse into the phrase "any occupation" the concepts of time and work schedules, LINA could not prevail. Under federal common law, which governs ERISA actions, if two reasonable and fair interpretations of the policy are possible, as is the situation here, then an ambiguity exists, which must be resolved in favor of the insured. Babikian, 63 F.3d at 840.

ORDER - 8

the essential skills for such position, but explaining that a quantitative reduction occurs when a person can still perform the required task, but not as often or as long as necessary to continue working))).[12]

Plaintiff's reading of the definition of "Disabled," set forth in the WOP provision of the policy, is both fair and reasonable. The language is not ambiguous, but even if it were, it would be construed against LINA, as the drafter. The Court concludes that LINA was required to, but did not, make a showing that the occupations identified in CRC Wilson's TSAs did not involve, as a material duty, working full-time. Thus, the

---

[12] Another case on which LINA relies, *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir. 1998), actually undermines, rather than supports, LINA's arguments. In *Ladd*, the plaintiff sought total-disability benefits under a plan that required her to be "unable to engage in any and every duty pertaining to any occupation or employment for wage or profit" for which she was or became qualified. *Id.* at 754. As observed by the Seventh Circuit, this language differs from the definition of disability under the Social Security Act, which considers whether an individual is incapable of engaging in "any substantial gainful activity." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). During oral argument before the Seventh Circuit, the insurer's attorney attempted to distinguish between the plan and the Social Security Act by suggesting that, under the plan, an employee would not be disabled unless he or she could not do even part-time work, but under the Social Security Act, a worker who could not perform full-time would be deemed disabled. *Id.* As observed by the *Ladd* Court, the lawyer's understanding was incorrect; under the Social Security Act, a person will not be considered disabled if he or she can engage in substantial gainful activity, even if merely on a part-time basis. *See id.* (citing 20 C.F.R. § 404.1572(a)). When asked by the Seventh Circuit whether the plan would preclude an individual who could work only ten minutes per day from receiving benefits, counsel for the insurer said "no" and "quickly retreated" from his efforts to differentiate between the plan and the Social Security Act. *Id.* The Seventh Circuit proceeded on the assumption that the plan defined "total disability" in the same manner as the Social Security Act, which requires, for a finding that a claimant is not disabled, that the work of which the claimant is capable "not be so meager as to not be substantial and gainful." *Id.* In *Ladd*, the Seventh Circuit ultimately held that the insurer's denial of the plaintiff's claim was "arbitrary, and even irrational." *Id.* at 755. Consistent with *Ladd*, the phrase "any occupation" cannot be read in isolation and interpreted to mean any quantum of work, even if only ten minutes per day. Rather, the term must be understood in context with the preceding clause "unable to perform all the material duties," which refers to both the qualitative and quantitative requirements of the occupation.

Court cannot affirm LINA's denial of WOP benefits, and LINA's motion for summary judgment is DENIED.

With respect to plaintiff's motion, the Court must accept LINA's evidence as true and draw all "justifiable inferences" in LINA's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To the extent that, as LINA's reviewers have indicated, plaintiff was able to perform some work tasks for a meaningful portion of the work day, the Court cannot say, as a matter of law, that plaintiff was, during the timeframe at issue, "unable to perform all the material duties of any occupation" for which she is or might reasonably become qualified.[13] The Court can, however, and does conclude that the TSAs authored by CRC Wilson, and thus the current Administrative Record, do not support LINA's denial of WOP benefits. LINA's decision is therefore VACATED.[14]

---

[13] The Court also cannot determine, as a matter of law, that the Death Benefit under the policy at issue is $525,000, as suggested by plaintiff. See Turner Decl. at ¶ 2 (docket no. 41). Plaintiff asserts that LINA "judicially admitted" this figure by not "effectively" denying the allegation set forth in the Complaint. See Pla.'s Mot. at 4-5 (docket no. 30); compare Compl. at ¶ 5 (docket no. 1) with Answer at ¶ 5 (docket no. 9). Plaintiff's argument lacks merit. LINA adequately pleaded a lack of knowledge or information sufficient to form a belief about the amount of the Death Benefit, which operated as a denial. See Fed. R. Civ. P. 8(b)(5). According to the policy, the Basic Benefit was equal to the Annual Compensation, rounded to the next higher $1,000. AR 4337. For plaintiff, the Basic Benefit was therefore $109,000. See AR 3295. A Voluntary Benefit was available in incremental units of $25,000, at a monthly rate depending on age. See AR 4332, 4361. The Maximum Voluntary Benefit was five times the Annual Compensation, and the Guaranteed Issue Amount, if premiums were not required, was $350,000. AR 4337; see AR 4348. Plaintiff has provided no citation to the Administrative Record and no specific evidence concerning what, if any, premiums she paid prior to March 13, 2014, for the Voluntary Benefit. Thus, plaintiff has not made the requisite showing to obtain summary judgment on her theory that, by accepting premium payments, LINA waived its defenses regarding the amount of the Death Benefit. See Salyers v. Metro. Life Ins. Co., 871 F.3d 934, 938 (9th Cir. 2017).

[14] In light of its ruling, the Court DECLINES to address whether LINA is bound by a statement allegedly made to Jill A. Fulkes, a paralegal working for plaintiff's counsel, indicating that WOP benefits would be "reinstated." See Fulkes Decl. at ¶ 4 (docket no. 34).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's motion for summary judgment, docket no. 33, is DENIED;

(2) Plaintiff's motion for summary judgment, docket no. 30, is GRANTED in part and DENIED in part;

(3) Defendant's denial of waiver of life insurance premium benefits is hereby VACATED;

(4) Counsel are DIRECTED to submit a Joint Status Report within seven (7) days of the date of this Order indicating whether they wish to proceed to trial as scheduled on January 16, 2018, on the sole issue of the amount of the Death Benefit under the policy at issue;

(5) The parties' stipulated motion for relief from deadlines, docket no. 43, is STRICKEN as moot; and

(6) The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 1st day of December, 2017.

Thomas S. Zilly
United States District Judge